40 F.3d 474
 309 U.S.App.D.C. 218
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,
et al., Petitioners
v.
FEDERAL COMMUNICATIONS COMMISSION, et al., Respondents.
 No. 93-1433.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 27, 1994.
 
 Before: WILLIAMS, GINSBURG, and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the administrative record and on the briefs and arguments of counsel. The court is satisfied that appropriate disposition of the case does not call for further opinion. See D.C.Cir.Rule 36(b).
 
 
 2
 For the reasons set out in the attached memorandum, it is
 
 
 3
 ORDERED and ADJUDGED that the petitions for review be denied.
 
 
 4
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a)(2). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of mandate for good cause shown.
 
 ATTACHMENT
 MEMORANDUM
 
 5
 Petitioners seek review of two orders of the Federal Communications Commission establishing guidelines for the use of the 1605-1705 kHz bloc of the radio-frequency spectrum, the so-called expanded AM radio band. In the Matter of Review of the Technical Assignment Criteria for the AM Broadcast Service, 6 FCCRcd 6273 (1991) ("Report and Order "), recon. denied, 8 FCCRcd 3250 (1993) ("Recon.Order "). The court is satisfied that the Commission gave adequate consideration to Petitioners' comments, see Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council Inc., 435 U.S. 519, 553 (1978), and neither ignored nor changed any prior policies or standards in formulating its decisions. See Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C.Cir.1970). The court is also convinced that the Commission articulated a satisfactory explanation for choosing to limit frequency allocations in the expanded band to incumbent licensees and thus refusing to adopt any minority-ownership incentives beyond the current preferences certain minority applicants already receive in applying for radio broadcast licenses. See generally Revision of Radio Rules and Policies, 7 FCCRcd 6387 (1992).
 
 
 6
 In an attempt to reinvigorate the AM radio broadcast industry, the Commission chose to dedicate "all available resources" to the goal of reducing the congestion and interference on the AM radio band. Report and Order, 6 FCCRcd at 6307-08. In the orders at issue and other associated rulemakings, the Commission outlined and eventually adopted new technical standards for AM radio broadcasts. As an integral part of this effort, existing AM broadcasters may apply to move their stations to the expanded band. These migrations to the expanded band will be approved by the Commission based on the degree to which the new frequency allocation will reduce interference and congestion on the existing AM radio band. Id. at 6315-19. The Commission justifiably concluded that setting aside even a relatively small portion of the available expanded band would unduly hinder its efforts to alleviate conditions on the overcrowded portions of the broadcast spectrum. Id. at 6307.
 
 
 7
 Petitioners argue that even if setting aside a portion of the expanded band for certain broadcasters is inconsistent with the goal of reducing congestion and interference, the Commission must still explain why other minority-ownership incentives should not be implemented where "no broadcasters in the existing AM band request the allocation" or "where none of the stations requesting the allocation would, in fact, reduce the interference or congestion on the existing AM band." See Notice of Proposed Rule Making, 5 FCCRcd 4381, 4396 (1990) ("NPRM ") (separate statement of Commissioner Barrett). We note that while their position on this issue was made clear to the Commission during the comment period, see Comments of the National Association for the Advancement of Colored People, the League of United Latin American Citizens, and the National Black Media Coalition, Dkt. No. 87-267, p. 12 (Oct. 15, 1990), the petitioners failed to advance any specific proposal before the Commission until their petition for reconsideration. Recon.Order, 8 FCCRcd at 3254. A party may only fault the Commission for failing to consider an alternative presented in a timely manner. See 47 C.F.R. Sec. 1.106.
 
 
 8
 Nevertheless, the Commission was justified in rejecting any of the petitioners' alternate proposals on the merits. Due to the nature of AM radio interference, the agency reasonably assumed there would be no situations where allowing an incumbent broadcaster to migrate rather than allowing a new broadcaster to occupy a frequency on the expanded band would not reduce interference and congestion enough to justify foregoing the potential benefits of allowing a new broadcaster onto the airwaves. See NPRM, 5 FCCRcd at 4408 (App. 3) (showing the far-reaching effects of even one station migrating to the expanded band). Because AM radio signals can traverse hundreds of miles and cause interference far beyond the range at which the signal is able to be received, the occupation of the expanded band must be done with an eye to the best possible arrangement of broadcasters across the entire country. See, e.g., Report and Order, 6 FCCRcd at 6355-93 (App. D). The Commission is faced with the task of determining the optimal arrangement of a complex and far-flung network of signals, it is not simply doling out a predetermined number of allocations.
 
 
 9
 In short, the Commission did not abuse its discretion in determining that the successful utilization of the expanded band meant that there would be no opportunities for new broadcasters, regardless of whether they were minorities.